[Cite as *State v. Newman*, 2021-Ohio-197.]

NewCOURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. Craig R. Baldwin, P.J. |
| Plaintiff - Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | |
| TYLER NEWMAN | : | Case No. 2020 CA 0020 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:        Appeal from the Richland County
                                Court of Common Pleas, Case No.
                                2019-CR-0388

JUDGMENT:                       Affirmed

DATE OF JUDGMENT:               January 27, 2021

APPEARANCES:

For Plaintiff-Appellee                      For Defendant-Appellant

GARY BISHOP                                 RANDALL FRY
Prosecuting Attorney                        10 West Newlon Place
Richland County, Ohio                       Mansfield, Ohio 44902

JOSEPH C. SNYDER
Assistant Prosecuting Attorney
38 South Park Street
Mansfield, Ohio 44902

*Baldwin, J.*

**{¶1}** Appellant, Tyler Newman, appeals the decision of the Richland County Court of Common Pleas overruling his motion to suppress and finding him guilty of trafficking in cocaine, a violation of R.C. 2925.03 (A)(2) & (C)(4)(g), a first-degree felony; possession of cocaine, a violation of R.C. 2925.11 (A) & (C)(4)(f), a first-degree felony; aggravated funding of drug trafficking, a violation of R.C. 2925.05 (A)(3) & (C)(1), a first-degree felony; operating a vehicle with a hidden compartment used to transport a controlled substance in violation of R.C. 2923.241 (C) & (F), a second-degree felony;  a forfeiture specification pursuant to R.C. 2941.1417 as to the first three counts and a major drug offender specification pursuant to R.C. 2941.1410 with regard to the aggravated funding of drug trafficking charge. The State of Ohio is appellee.

**{¶2}** Newman was a passenger in a vehicle driven by Kylie Newman on a trip from Texas to Ohio. The vehicle was stopped for speeding by the Ohio State Highway Patrol. As the driver searched for proof of insurance the Trooper led his dog around the vehicle. The dog detected the presence of illegal drugs in the vehicle and the Trooper discovered a large cache of cocaine in the false bottom of the toolbox. The driver, another passenger and Newman were arrested and charged.

**{¶3}** All defendants moved to suppress the evidence discovered by the Trooper and after a hearing, the trial court denied the motion, Newman changed his plea to no contest and was found guilty.

**STATEMENT OF THE CASE AND THE FACTS**

{¶4}   Trooper Cole Browne was on duty on February 6, 2019 when he was advised to watch for a vehicle. He received a description of the vehicle, license plate number, and the occupants. The Trooper was told that the vehicle may be carrying drugs and that if he had probable cause to stop the vehicle he should do so.

{¶5}   When Trooper Browne first saw the vehicle he estimated that it was traveling at a speed in excess of the 55 mph limit.  He confirmed the vehicle's speed with a laser and discovered that the driver was driving 60 mph. The vehicle rapidly slowed from 60 mph to 54 mph and then to 50 mph.

{¶6}   Trooper Browne trailed the vehicle and pulled beside it to confirm the number of passengers and to note their behavior.  He saw three occupants and noticed that the driver and the front seat passenger appeared to be conversing while looking ahead and not making eye contact with each other. The Trooper described them as looking rigid and uncomfortable in their seats. The passenger had a cell phone and was holding it at what Trooper Browne characterized as an odd angle.  While the Trooper agreed that these behaviors were not illegal, he did consider them uncharacteristic of "normal motoring public behavior."

{¶7}   Appellant, Tyler Newman, appeared to be asleep in the rear seat of the vehicle.

{¶8}   Once the Trooper reached a location where it was safe to pull off the road and the driver could not flee into an exit ramp, he activated his overhead lights to signal the driver to pull over. The driver complied, but positioned the vehicle so the driver's side was very close to the highway.  Because the vehicle was stopped close to the road,

Trooper Browne approached the passenger side of the vehicle and spoke with the driver through the passenger window. He requested the driver's license and the driver, Kylie Newman, began frantically rummaging through her purse. Trooper Browne also requested proof of insurance at the outset of the stop.  The front seat passenger, German Zuniga passed documents from Kylie Newman to the Trooper and the Trooper noted that both looked very uncomfortable and Zuniga's hands were shaking as he passed the papers. Trooper Browne characterized the behavior of the driver and Zuniga as more nervous than he has experienced in past traffic stops.

{¶9}    The proof of insurance that Newman provided had expired, so the Trooper returned the document and asked if she had valid proof of insurance. She continued to search and the Trooper asked her to exit the vehicle and enter his cruiser to make it easier to talk with her.  She declined the invitation to enter the cruiser claiming to be claustrophobic, but did get out of the vehicle to speak with the Trooper. Newman suggested that the Trooper call her insurance company to confirm the validity of her coverage, but the Trooper was not willing to do so.  He suggested that she may be able to find proof of her coverage on her cell phone.  She agreed and began to search her phone.

{¶10}  While she searched her cell phone for evidence of insurance, the Trooper asked about the starting point and destination of her trip.  She explained that they were visiting Zuniga's relative in a Texas hospital where he was being treated for cancer, but she could not remember the name of the facility.  She confirmed that she had visited and that they were in Texas for one week. When the Trooper asked where she was going she

replied that she was going home to Lorain, Ohio, but the route she was driving took her away from Lorain.

{¶11} The uncharacteristic nervousness of the driver and passenger and the driver's answers to questions, in the context of the information that the car may contain drugs, led Trooper Browne to read the driver her Miranda rights. Once he read her rights, she asked for the opportunity to speak with her lawyer. She reached her attorney by phone, and while she talked with her attorney, Trooper Browne moved away from her and back toward her vehicle.

{¶12} While Newman was speaking with her attorney, Trooper Browne asked Zuniga where they were heading. He answered "Lorain," but quickly corrected his response and explained that he was going to pick up a dress for his daughter and the driver did not know where they were going. Trooper Brown interpreted this response as inconsistent with the driver's description of their destination and further raised his suspicion. At this point Trooper Browne decided that he would use his dog, Atos, to sniff around the vehicle.

{¶13} Trooper Browne and his dog, Atos, completed three passes around the vehicle. On the first pass, Atos did not alert to any scents and did not indicate the presence of narcotics. On the second pass, Atos inhaled hot exhaust from the vehicle that interfered with his ability to perform, so Trooper Browne made a third pass. During that sweep of the vehicle, Atos alerted to the scent of narcotics and indicated that there were drugs in the vehicle in the vicinity of a tool box in the back of the vehicle. Trooper Browne opened the toolbox and discovered a false bottom concealing a very large amount of a white powder in plastic bags, later confirmed to be cocaine.

{¶14} Newman was charged with trafficking in cocaine, a violation of R.C. 2925.03 (A)(2) & (C)(4)(g), a first-degree felony; possession of cocaine, a violation of R.C. 2925.11 (A) & (C)(4)(f), a first-degree felony; aggravated funding of drug trafficking, a violation of R.C. 2925.05 (A)(3) & (C)(1), a first-degree felony; operating a vehicle with a hidden compartment used to transport a controlled substance in violation of R.C. 2923.241 (C) & (F), with a forfeiture specification pursuant to R. C. 2941.1417 as to the first three counts and a major drug offender specification pursuant to R. C. 2941.1410 with regard to the aggravated funding of drug trafficking charge.

{¶15} Newman entered a plea of not guilty and moved to suppress the evidence discovered in the search of the vehicle.  At the hearing on the motion, Trooper Browne testified regarding the notification he received regarding the vehicle and the passengers and his traffic stop based upon speeding.  He described the conversation with the driver and the occupants and his concern that the driver and Zuniga exhibited excessively nervous behaviors, and gave inconsistent responses to questions about their destination. He concluded that the facts warranted using Atos to check for drugs, so, while Kylie Newman was searching for proof of insurance, he conducted three sweeps of the vehicle ultimately leading to the discovery of cocaine.

{¶16} Trooper Brown also described his training to become a canine officer certified to use a dog to detect narcotics as well as his dog's training to become certified to detect drugs.  He described his experience with Atos, the dog assigned him, confirmed that both he and the dog were regularly certified to search for drugs and identified an exhibit consisting of records supporting Atos' training and reliability.

{¶17} The defendants offered the expert testimony of Andre Falco Jimenez who was critical of the Trooper's use of Atos to search for evidence of narcotics. Mr. Jiminez claimed Trooper Browne's handling of Atos was inappropriate leading the dog to alert not as a result of the scent of narcotics, but as a result of the improper encouragement by Trooper Browne. He questioned the training of Atos, and suggested that his behavior during the passes around the vehicle indicates the dog was not focused on the task and was primarily acting to please Trooper Browne. He was also critical of how Atos alerted to the scent of the cocaine, laying down. He opined that the more acceptable and more distinct alert is to sit. Mr. Jiminez concluded by stating his opinion that Atos did not indicate the presence of illegal drugs in the vehicle.

{¶18} Sergeant Barrett of the Ohio State Highway Patrol was offered by the state in rebuttal of Mr. Jimenez's testimony. Barrett described his background in canine training and noted that his current primary responsibilities at the Ohio State Highway Patrol include supervision of the canine training program. He described the training received by Atos and Trooper Browne as well as the regular certification and qualification of Atos and Trooper Browne. He concluded that the sweep of the vehicle was appropriately conducted and that Atos was not mishandled, but clearly signaled his discovery of narcotics in the vehicle.

{¶19} The trial court denied the motion to suppress and Newman changed his plea to no contest. His change of plea was accepted by the trial court and he was sentenced to an aggregate of eleven years in prison and ordered to forfeit $1741.00. Newman filed a timely appeal and submitted one assignment of error:

{¶20} "I. THE TRIAL COURT ERRED IN OVERRULING THE MOTION TO SUPPRESS FILED BY THE TRIAL ATTORNEY IN THIS CASE."

{¶21} In his sole assignment of error, Newman contends that the trial court erred by denying the motion to suppress because "the length of detainment of the Appellant in this incident was beyond the time of a reasonable detainment." He contends that the Trooper had an obligation to either issue a warning or a citation and release the driver and the Trooper's act of allowing the driver additional time to search for proof of insurance created an illegal and unconstitutional seizure of his person.

{¶22} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. See *State v. Dunlap*, 73 Ohio St.3d 308, 314, 652 N.E.2d 988 (1995); *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. See *Burnside, supra; Dunlap, supra; State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist. 1998); *State v. Medcalf*, 111 Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist. 1996). However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. See *Burnside, supra*, quoting *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539 (4th Dist. 1997); See, generally, *United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002); *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). That is, the application of the law to the trial court's findings

of fact is subject to a de novo standard of review *Ornelas, supra. State v. Johns*, 5th Dist. No. 19-CA-5, 2019-Ohio-4269, 146 N.E.3d 1286, ¶ 11.

**{¶23}** Newman does not contest the validity of the traffic stop, but he does complain that the stop was merely a pretext for the search for drugs. We previously addressed such a criticism and concluded that "[a] traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has a reasonable, articulable suspicion a traffic or equipment violation has occurred or is occurring. *City of Dayton v. Erickson*, (1996), 76 Ohio St.3d 3. It is irrelevant the officer may have had other subjective motives for stopping the vehicle. *Id.* " *State v. Ackerson*, 5th Dist. Stark No. 2012CA00228, 2013-Ohio-4020, ¶ 21. Exceeding the speed limit, even by five miles per hour, is a traffic violation that validates the Trooper's actions. Further, he acknowledged that he regularly stopped drivers for such a violation.

**{¶24}** Fifteen minutes passed between the time that the Trooper stopped the vehicle and the discovery of cocaine in the tool box. Appellant argues that Trooper Browne had the obligation to promptly issue a citation or a warning and end the stop before the discovery of the narcotics, but he does not expressly state what triggered that duty. Trooper Browne asked the driver for proof of insurance as he was obligated to do under R.C. 4509.101(D)(2). The driver first offered what turned out to be evidence of an expired insurance policy, so Trooper Browne asked the driver for proof of an active policy. The driver never conceded that she did not have an active policy or could not locate proof and continued searching for evidence while the Trooper waited.

**{¶25}** Trooper Browne explained that his next step during this stop was contingent upon the driver producing proof of insurance. He stopped the driver for exceeding the

speed limit by five miles per hour. Trooper Browne explained that he would typically issue a warning in these circumstances if the driver produces proof of insurance. If the driver cannot supply proof of insurance, he would issue a citation and mark a box on the citation that proof of insurance had not been shown at the stop. The Trooper described this procedure as providing a driver the opportunity to avoid a citation.

{¶26} Newman contends that the Trooper could have issued a warning or a traffic ticket and released the driver and that the extension of the stop was unreasonable. He notes that the Trooper could have noted the failure to produce proof of insurance on the citation and allowed the driver to present the proof to the court pursuant to R.C. 4509.101. While the Trooper may have taken a different approach, he decided to wait for the proof of insurance, and the issue before this court is whether that delay was unreasonable under the circumstances.

{¶27} The Ohio Supreme Court has held,

[W]hen detaining a motorist for a traffic violation, an officer may delay the motorist for a time period sufficient to issue a ticket or a warning. *State v. Keathley* (1988), 55 Ohio App.3d 130, 131 [562 N.E.2d 932]. This measure includes the period of time sufficient to run a computer check on the driver's license, registration, and vehicle plates. *State v. Bolden*, Preble App. No. CA2003–03–007, 2004–Ohio–184 [2004 WL 77617], ¶ 17, citing *Delaware v. Prouse* (1979), 440 U.S. 648, 659, 99 S.Ct. 1391 [59 L.Ed.2d 660]. "In determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted

the investigation. *State v. Carlson* (1995), 102 Ohio App.3d 585, 598–599 [657 N.E.2d 591], citing *State v. Cook* (1992), 65 Ohio St.3d 516, 521–522 [605 N.E.2d 70], and *U.S. v. Sharpe* (1985), 470 U.S. 675, 105 S.Ct. 1568 [84 L.Ed.2d 605].

*State v. Batchili,* 113 Ohio St.3d 403, 2007–Ohio–2204, 865 N.E .2d 1282, ¶ 12.

**{¶28}** To justify a continued detention beyond the normal period required to issue a citation the officer must have a "reasonable, articulable suspicion of criminal activity beyond that which prompted the initial stop." *Batchili*, ¶ 15. "In determining whether a detention is reasonable, the court must look at the totality of the circumstances." *State v. Matteucci,* 11th Dist. No. 2001–L–205, 2003–Ohio–702, ¶ 30, citing *State v. Bobo*, 37 Ohio St.3d 177, 178, 524 N.E.2d 489(1988).

**{¶29}** In *State v. Guinto,* 5th Dist. Ashland No. 12-COA-031, 2013-Ohio-2180 we found that a thirty-one minute delay attributable to the necessity that the driver provide valid proof of insurance was not an unreasonable extension of the detention of the parties. In that case, just as in this case, the Trooper was "waiting on the current insurance card for the driver and was asking questions of the occupants based upon the "indicators" that the Trooper observed." *Id.* at ¶ 34. In this case the detention was fifteen minutes from the beginning of the stop until the drug dog indicated the presence of an illegal drug. Once the drug dog gave the indication, the Trooper had probable cause to search that vehicle for contraband and further extend the stop.

**{¶30}** Considering the totality of the circumstances, we find that the duration of the stop was not unreasonable and the Trooper diligently conducted his investigation. No violation of Newman's Fourth Amendment rights has been demonstrated.

**{¶31}**  The assignment of error is overruled.

**{¶32}**  The decision of the Richland County Court of Common Pleas is affirmed.

By: Baldwin, J.

Wise, P.J. and

Delaney, J. concur.