[Cite as *State v. Triplett*, 2022-Ohio-1371.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. Earle E. Wise, Jr., P. J. |
| Plaintiff-Appellee | Hon. John W. Wise, J.<br>Hon. Patricia A. Delaney, J. |
| -vs- | |
| DARNELL A. TRIPLETT | Case No. 21 CAA 06 0031 |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:     Criminal Appeal from the Court of Common
Pleas, Case No.  20 CR I 09 0586


JUDGMENT:     Affirmed


DATE OF JUDGMENT ENTRY:     April 22, 2022


APPEARANCES:

For Plaintiff-Appellee                              For Defendant-Appellant

MELISSA A. SCHIFFEL                         KIMBERLY CORRAL
PROSECUTING ATTORNEY                 LINDSEY STANKOVICH
CHRISTOPHER E. BALLARD               LAW OFFICE of KIMBERLY CORRAL
ASSISTANT PROSECUTOR                   4403 St. Clair Avenue
145 North Union Street, 3rd Floor         Cleveland, Ohio  44103-1125
Delaware, Ohio  43015

*Wise, John, J.*

**{¶1}** Appellant Darnell A. Triplett appeals his conviction on one count of Trafficking in Cocaine and one count of Possession of Cocaine, entered in the Delaware County Court of Common Pleas following a jury trial.

**{¶2}** Appellee is the state of Ohio.

## STATEMENT OF THE FACTS AND CASE

**{¶3}** The relevant facts and procedural history are as follows:

**{¶4}** On December 17, 2020, Appellant was indicted by the Delaware County Grand Jury on one count of Possession of Cocaine, in violation of R.C. §2925.11(A), and one count of Trafficking in Cocaine, in violation of R.C. §2925.03(A)(2), with accompanying forfeiture and "major drug offender" specifications.

**{¶5}** On February 1, 2021, Appellant filed a Motion to Suppress.

**{¶6}** On February 16, 2021, the trial court held a hearing on Appellant's Motion to Suppress. At said hearing, the trial court heard the following testimony:

**{¶7}** On September 11, 2020, around 3:15 pm, Dep. Hunter was parked in his cruiser watching northbound traffic on Interstate 71. (Supp. T. at 9). He noticed a Dodge Charger that was going at least ten miles under the posted speed limit, and upon running the license plate, found that it was expired out of the state of Pennsylvania. (Supp. T. at 9-10, 31). Dep. Hunter was aware at the time that Ohio had tolled the expiration of registrations due to COVID-19, but did not believe Pennsylvania had taken a similar measure. (Supp. T. at 36-37, 39, 43). Dep. Hunter pulled out of the cross-over and as he was catching up to the Charger, he observed it move from the center lane into the slow lane directly behind another motorist, which he suspected may have been to evade

his cruiser. (Supp. T. at 10-11). The deputy observed that the Charger was going approximately sixty-five (65) miles per hour and it was only one car length behind the other motorist, which in his training and experience could cause a crash if the other motorist stopped or slowed down. (Supp. T. at 10-12, 40, 47).

{¶8} After Dep. Hunter initiated a traffic stop, the Charger pulled over and the deputy made contact with the driver, Appellant. (Supp. T. at 16). There were also two female passengers, one in the front passenger seat and one in the backseat. Dep. Hunter told Appellant he had stopped him due to the expired registration and changing lanes too closely to another vehicle. Appellant expressed surprise about the registration, saying the Charger was a rental. Dep. Hunter asked him if he had the rental agreement and Appellant began to rummage in the glovebox. After searching, Appellant said that while he did not have a paper rental agreement, he could pull it up on his e-mail. When asked where they were headed that day, Appellant said he was a resident of Columbus and they were headed to Toledo. After searching his cellphone, Appellant then said he would need to call someone about the rental agreement. Appellant said he had rented the Charger for the week. Appellant produced a registration card, which confirmed the registration had expired on August 31, 2020. (Supp. T. at 16-17).

{¶9} Deputy Hunter was concerned that based on the expired registration and the lack of a rental agreement, the Charger may be overdue to be returned to the rental company or stolen. He stated that in his experience, it is not uncommon for it to take two to three weeks before a rental car is reported stolen.

{¶10} Deputy Hunter also explained that this was the first time he had ever seen a rental car with an expired registration. (Supp. T. at 18). Dep. Hunter also noted that the

Charger appeared "lived in" as it was strewn with dust and debris throughout the interior. (Supp. T. at 19). He stated that there was also a strong odor of car air freshener. *Id.* The deputy also noted that despite there only being three occupants, there appeared to be five cellphones in the Charger. (Supp. T. at 20). The deputy testified that in his experience, "longer term" rentals are often used in drug smuggling to avoid having personal vehicles seized or personal information available by running license plates. (Supp. T. at 20-21).

{¶11} Dep. Hunter aired Appellant's identifiers to dispatch and learned that Appellant had an "armed and dangerous" caution due to a prior conviction, and that he was subject to a protection order. (Supp. T. at 22, 66). Dep. Hunter contacted Dep. Lee, who was *en route* to assist, and asked him to contact Enterprise Rent-A-Car to confirm the Charger was not overdue or stolen. (Supp. T. at 22). Dep. Hunter then returned to his cruiser and ran Appellant's information, trying to find the names of the protected parties on the protection order to confirm that the female passengers were not the subjects of the order. (Supp. T. at 23).

{¶12} Dep. Hunter testified that at this point he was intending to have his K9 partner sniff the vehicle, as everything he had observed raised his suspicions that the Charger may contain drugs. (Supp. T. at 24). After speaking with dispatch and returning to the Charger to obtain identification from the two women, Dep. Hunter confirmed they were not the subjects of the protection order. (Supp. T. at 25). In preparation for the K9 sniff, Dep. Hunter had Appellant exit the Charger. Appellant was still talking on his cellphone in an apparent effort to find the rental agreement. Dep. Hunter then had Dep. Lee ask the two women out of the Charger, at which point Dep. Lee spotted some marijuana in

the passenger door. (Supp. T. at 25 -26). At this point the deputies still had been unable to confirm the status of the Charger with the rental company. (Supp. T. at 70). Deps. Hunter and Lee searched the Charger and found some raw marijuana, as well as the three kilogram parcels of cocaine concealed in the upholstery. (Supp. T. at 26-27).

{¶13} Dep. Lee also testified, with his body worn camera footage admitted as State's Ex. 2. (Supp. T. at 71). Dep. Hunter contacted Dep. Lee and asked him to confirm the status of the Charger with the rental car, while Dep. Lee was *en route* to the traffic stop with another deputy that he was training. (Supp. T. at 73-74). Dep. Lee testified that when he asked the women out of the Charger at Hunter's behest, he noticed a raw marijuana "bud" in the front passenger door, after which he and Dep. Hunter searched the Charger and discovered the cocaine. (Supp. T. at 75, 78).

{¶14} By Judgment Entry filed February 23, 2021, the trial court denied Appellant's motion to suppress finding that the R.C. §4511.34(A) traffic offense of following too closely  justified the stop, and that there was no evidence of an unreasonably prolonged stop.

{¶15} On May 13, 2021, a jury trial commenced with Appellant being convicted on all counts, but acquitted on the forfeiture specification.

{¶16} By Judgment Entry filed May 17, 2021, the trial court sentenced Appellant to a mandatory sentence of 11 to 16.5 years imprisonment.

{¶17} Appellant now appeals, assigning the following error for review:

### ASSIGNMENTS OF ERROR

{¶18} "I. THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION TO SUPPRESS."

**I.**

{¶19} In his sole assignment of error, Appellant argues the trial court erred in denying his motion to suppress. We disagree.

{¶20} Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact. *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist.1998). During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks*, 75 Ohio St.3d 148, 154, 661 N.E.2d 1030 (1996). A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Medcalf*, 111 Ohio App.3d 142, 145, 675 N.E.2d 1268 (4th Dist.1996). Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard. *State v. Williams*, 86 Ohio App.3d 37, 42, 619 N.E.2d 1141 (4th Dist.1993), overruled on other grounds.

{¶21} There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. *See, State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (4th Dist.1991). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *See, Williams*,

*supra.* Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry,* 95 Ohio App.3d 93, 96,620 N.E.2d 906 (8th Dist.1994).

{¶22} In the instant case, Appellant argues the officer lacked reasonable and articulable suspicion for the traffic stop.

{¶23} The Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures, rendering them per se unreasonable unless an exception applies. *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). An investigative stop, or *Terry* stop, is a common exception to the Fourth Amendment warrant requirement. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Because the "balance between the public interest and the individual's right to personal security" tilts in favor of a standard less than probable cause in such cases, the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe that criminal activity "may be afoot." *United States v. Brignoni– Ponce,* 422 U.S. 873, 878, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989).

{¶24} In *Terry,* the Supreme Court held that a police officer may stop an individual if the officer has a reasonable suspicion based upon specific and articulable facts that criminal behavior has occurred or is imminent. *See, State v. Chatton,* 11 Ohio St.3d 59, 61, 463 N.E.2d 1237 (1984). The propriety of an investigative stop must be viewed in light of the totality of the circumstances surrounding the stop "as viewed through the eyes

of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Andrews,* 57 Ohio St.3d 86, 87–88, 565 N.E.2d 1271 (1991); *State v. Bobo,* 37 Ohio St.3d 177, 178, 524 N.E.2d 489 (1988). The Supreme Court of the United States has re-emphasized the importance of reviewing the totality of the circumstances in making a reasonable-suspicion determination:

> When discussing how reviewing courts should make reasonable-suspicion determinations, we have said repeatedly that they must look at the "totality of the circumstances" of each case to see whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing. This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that "might well elude an untrained person." Although an officer's reliance on a mere "hunch" is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard.

**{¶25}** *United States v. Arvizu,* 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002), citing *United States v. Cortez,* 449 U.S. 411, 417–418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).

**{¶26}** Traffic stops based upon observation of a traffic violation are constitutionally permissible. *Dayton v. Erickson,* 76 Ohio St.3d 3, 11–12, 1996-Ohio-431, 665 N.E.2d 1091. This Court has held that any traffic violation, even a *de minimis* violation, may form a sufficient basis upon which to stop a vehicle. *State v. Bangoura,* 5th Dist. No. 08 CA

95, 2009-Ohio-3339, 2009 WL 1916902, ¶ 14, citing *State v. McCormick,* 5th Dist. No.2000CA00204, 2001 WL 111891 (Feb. 2, 2001); *State v. Woods*, 5th Dist. Licking No. 12-CA-19, 2013-Ohio-1136, 2013 WL 1209351, ¶ 60.

**{¶27}** In the instant case, the deputy stopped Appellant after first observing that the vehicle he was driving had expired Pennsylvania license plates and then observing him change lanes without leaving sufficient distance to the car in front of him, following more closely than is reasonable and prudent, in violation of R.C. §4511.34(A), which provides:

R.C. §4511.34 Space Between Moving Vehicles

(A) The operator of a motor vehicle, streetcar, or trackless trolley shall not follow another vehicle, streetcar, or trackless trolley more closely than is reasonable and prudent, having due regard for the speed of such vehicle, streetcar, or trackless trolley, and the traffic upon and the condition of the highway.

**{¶28}** "Although R.C. 4511.34(A) does not provide a specific standard for determining when a motorist is following another vehicle more closely than is reasonable and prudent, numerous courts have concluded that a motorist's failure to follow another vehicle at a distance greater than one car length for every ten miles per hour the motorist's vehicle is traveling may, in some circumstances, indicate that the motorist is in violation of R.C. 4511.34." *State v. Holmes*, 3d Dist. Allen No. 1-18-52, 2019-Ohio-2485, ¶ 29, citing *State v. Ward*, 4th Dist. Washington No. 10CA30, 2011-Ohio-1261, ¶ 16-17, *State v. Kelly*, 188 Ohio App.3d 842, 2010-Ohio-3560, ¶ 18-20 (12th Dist.), *State v. Stokes*, 10th Dist. Franklin No. 07AP-960, 2008-Ohio-5222, ¶ 24-25, *State v. Meza*,

6th Dist. Lucas No. L-03-1223, 2005-Ohio-1221, ¶ 19, and *United States v. Dukes*, 257 Fed.Appx. 855, 858 (6th Cir. 2007). "However, regardless of this 'car-length' standard, '[a]s is clear, the statute is couched in relative terms, and violations depend upon the circumstances of a given case.' " *Id.*, quoting *State v. Mason-Cowan*, 10th Dist. Franklin No. 11AP-261, 2012-Ohio-1074, ¶ 7, citing *State v. Gonzalez*, 43 Ohio App.3d 59, 62 (6th Dist.1987).

{¶29} A number of appellate districts have found that violations of R.C. §4511.34 can support a traffic stop. *See State v. Holmes,* 139 N.E.3d 574, 2019-Ohio-2485 (3rd Dist.), ¶ 29 ("numerous courts have concluded that a motorist's failure to follow another vehicle at a distance greater than one car length for every ten miles per hour the motorist's vehicle is traveling" can justify a stop for a R.C. 4511.34 violation); *State v. Johnson,* 9th Dist. Medina No. 03CA0127-M, 2004-0hio-3409, ¶¶ 9, 15 (where the defendant's vehicle was "travelling within one car length of a semi-truck at a speed of between 60 and 65 miles per hour," the arresting officer "had reasonable suspicion to conduct an investigatory stop" of the vehicle); *State v. Bell,* 12th Dist. Preble No. CA 2001-06-009, 2002-Ohio-561, 2002 WL 205502 ("following a vehicle too closely in violation of R.C. 4511.34 is a reasonable basis for a traffic stop").

{¶30} " 'An officer's direct observation that a vehicle is following another vehicle too closely provides probable cause to initiate a lawful traffic stop.' " *Id.*, quoting *Kelly* at ¶ 15, citing *State v. Perry*, 12th Dist. Preble No. CA2004-11-016, 2005-Ohio-6041, ¶ 12.

{¶31} Upon our review of the record, we find evidence in the record, in the form of the deputy's testimony and the dash-cam video footage (State's Exhibit 1), to support the traffic stop. The testimony and evidence support a finding that the Appellant, while

traveling at approximately 65 mph, changed lanes and only left about one car length of distance between his vehicle and the vehicle in front of him, and that such action was not "reasonable" or "prudent".

**{¶32}** We also find that the expired license plate was sufficient justification to stop Appellant.  As Deputy Hunter explained, while he was aware that Ohio had extended the deadline for registration renewal, he did not know if the same held true for the state of Pennsylvania. (Supp. T. at 43). He also stated that it is very unusual for a rental car to have an expired tag, and that he believed it was possible the vehicle was overdue or stolen and not yet in the system. (Supp. T. at 18, 38-39).

**{¶33}** Having found that the deputy had reasonable and articulable suspicion to stop Appellant's vehicle, we will next consider whether the stop was unreasonably prolonged.

**{¶34}** The Ohio Supreme Court has held:

[W]hen detaining a motorist for a traffic violation, an officer may delay the motorist for a time period sufficient to issue a ticket or a warning. *State v. Keathley* (1988), 55 Ohio App.3d 130, 131 [562 N.E.2d 932]. This measure includes the period of time sufficient to run a computer check on the driver's license, registration, and vehicle plates. *State v. Bolden*, Preble App. No. CA2003-03-007, 2004-Ohio-184 [2004 WL 77617], ¶ 17, citing *Delaware v. Prouse* (1979), 440 U.S. 648, 659, 99 S.Ct. 1391 [59 L.Ed.2d 660]. "In determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently

conducted the investigation." *State v. Carlson* (1995), 102 Ohio App.3d 585, 598–599 [657 N.E.2d 591], citing *State v. Cook* (1992), 65 Ohio St.3d 516, 521–522 [605 N.E.2d 70], and *U.S. v. Sharpe* (1985), 470 U.S. 675, 105 S.Ct. 1568 [84 L.Ed.2d 605].

**{¶35}** *State v. Newman*, 5th Dist. Richland No. 2020 CA 0020, 2021-Ohio-197, ¶ 27 citing *State v. Batchili,* 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.E.2d 1282, ¶ 12.

**{¶36}** To justify a continued detention beyond the normal period required to issue a citation, the officer must have a "reasonable, articulable suspicion of criminal activity beyond that which prompted the initial stop." *Batchili*, ¶ 15. "In determining whether a detention is reasonable, the court must look at the totality of the circumstances." *State v. Matteucci,* 11th Dist. No. 2001-L-205, 2003-Ohio-702, ¶ 30, citing *State v. Bobo*, 37 Ohio St.3d 177, 178, 524 N.E.2d 489(1988).

**{¶37}** A review of video footage (State's Exhibit 1) shows  that Dep. Hunter spent the first four minutes of the stop making initial contact with Appellant, explaining that he stopped him for an expired license plate and for following too closely to the vehicle in front him, and asking him for the vehicle registration and documentation. At approximately five minutes into the stop, Dep. Hunter returned to his cruiser to run Appellant's information through his computer and to radio Dep. Lee to contact Enterprise Rent-A-Car. Dep. Hunter was informed by dispatch that Appellant had an "armed and dangerous" caution due to a prior conviction and that he was the subject of a protection order.  At about eight minutes into the stop, Dep. Hunter radioed dispatch to get the name of the protected party or parties on Appellant's protection order and then promptly returned to Appellant's vehicle. At nine minutes, Dep. Hunter requested the passenger's

identification cards to confirm that neither of the female passengers was the protected party. At approximately the ten-minute mark, Dep. Lee and another deputy arrived on scene, and Dep. Hunter spoke to Deputy Lee while Appellant continued to talk on his cellphone in an apparent effort to find the rental agreement. At approximately the ten-and-a-half minute mark, Dep. Hunter asked Appellant to step out of the Charger, and Appellant continued to search for the paperwork on his cellphone. Twelve minutes into the stop, Dep. Hunter asked Dep. Lee to have the two women also exit the Charger, at which point Dep. Lee noted a raw marijuana bud in the passenger door. The deputies then asked Appellant and the two women if they had medical marijuana cards, and all three stated that they did not. (Feb. 23, 2021, Judg. Entry, 13-17). At this time, Appellant was still on his cell phone attempting to locate the rental car documentation.

{¶38} In *State v. Guinto,* 5th Dist. Ashland No. 12-COA-031, 2013-Ohio-2180, this Court found that a thirty-one (31) minute delay attributable to the necessity that the driver provide valid proof of insurance was not an unreasonable extension of the detention of the parties. In that case, just as in this case, the officer was "waiting on the current insurance card for the driver and was asking questions of the occupants based upon the "indicators" that the Trooper observed." *Id.* at ¶ 34. *See also State v. Newman*, 5th Dist. Richland No. 2020-CA-0020, 2021-Ohio-197 (the detention lasted fifteen minutes from the beginning of the stop until the drug dog indicated the presence of an illegal drug).

{¶39} In this case, the detention was only about twelve (12) minutes from the beginning of the stop until the illegal drugs were observed. At the time the drugs were observed, Appellant was still on his cell phone trying to locate his rental car documentation for the deputy. Once the drugs were observed in the passenger door, the

deputy had probable cause to search the vehicle for contraband and further extend the stop.

**{¶40}**  Considering the totality of the circumstances, we find that the duration of the stop was not unreasonable, and no violation of Appellant's Fourth Amendment rights has been demonstrated.

**{¶41}** Appellant's assignment of error is overruled.

**{¶42}** For the forgoing reasons, the judgment of the Court of Common Pleas, Delaware County, Ohio, is affirmed.


By: Wise, John, J.

Wise, Earle, P. J., and

Delaney, J., concur.

JWW/kw 0419